UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA,**

vs.                                                              Case No.: 8:11-cr-00197-T-24TGW

**MICHAEL JIMENEZ,**
          Defendant.
_____/

## DEFENDANT MICHAEL JIMENEZ'S SENTENCING MEMORANDUM

COMES NOW, Defendant, **MICHAEL JIMENEZ,** by and through his undersigned attorney, and pursuant to Title 18, U.S.C., §3553(a), hereby requests this Honorable Court consider this Sentencing Memorandum in determining a reasonable sentence. In sum, Mr. Jimenez requests that this Court sentence him to a term of probation and that doing so will result in a sentence sufficient but not greater than necessary as set forth in Title 18, U.S.C., §3553(a)(2).

### A. General Background

Mr. Jimenez stands convicted of Count 2 of the Indictment, Title 18, U.S.C., §666(a)(1)(A)(i) and (ii).[1] The Presentence Investigation Report (PSI) ordered by the Court has determined the Defendant's guideline range to be 6 to 12 months (offense level 10, criminal history category I), with placement within Zone B of the Sentencing Table. (See: paragraphs 75 and 76 of the PSI). This memorandum will discuss two issues which the

---

[1] The government has appealed this Court's post-trial order granting a judgment of acquittal as to Count 3.

Defendant has with that guideline calculation, a two level increase for amount of loss (paragraph 28 of the PSI) and a two level increase for adjustment for role in the offense due to an alleged abuse of a position of public or private trust (paragraph 30 of the PSI). Finally, the memorandum will, in a brief and concise manner, set forth the primary arguments in favor of a probationary sentence, even if this Court should find that the Defendant is correctly placed within Zone B of the advisory guideline table.

### B. Guideline Issues

### i. Amount of Loss

There is no dispute that the Head Start program spent $9,000.00 in this cause for the book published by the Defendant's spouse. It is an entirely different issue to determine whether or not that expenditure constitutes loss as contemplated by USSG §2B1.1(b)(B).

In determining any applicable loss, an understanding of the nature of the expenditure is necessary. Paragraph 23 of the PSI suggests that the United States government, through the Department of Health and Human Services, is a victim in this cause and should receive restitution. This conclusion no doubt stems from the trial testimony which established that the United States government provides a block grant to the Hillsborough County Head Start program for its discretionary use, consistent with the conditions of the block grant. This overall funding mechanism raises two points for consideration.

First, there was no evidence presented that the expenditure on the subject books was in any way in conflict with or contrary to the conditions of the subject grant. Almost all of the books were distributed to qualifying families and apparently of a useful benefit since

there was no testimony of any returns or complaints regarding the book.[2] Second, despite audit procedures available to the United States, there has been no attempt to charge Hillsborough County Head Start for a disallowed cost in connection with the purchase of the subject book. There is an annual "single audit" of the Head Start block grant during which the United States is allowed to challenge expenditures and request appropriate credits. As of this time, no such credit has been requested for the purchase of the subject book.

The United States was committed to spending the amount of money made available to Hillsborough County Head Start. Head Start spent that money consistent with the conditions of the grant imposed by the United States. Whether the subject funds were spent inappropriately, as the jury found, on the subject books or properly on some other acquisition is of no moment to the United States. Its total block grant expenditure remains unchanged and no loss should be attributable to this Defendant.

The Defendant believes that this position is bolstered by the Application Notes to §2B1.1, more specifically, Application Note 1(E) which provides for credits against loss. In cases involving collateral provided by a Defendant, the fair market value of that collateral is a credit against loss. Since the books were valued at $6,270.00 (the cost to Mrs. Melendez), the loss can be no more than $2,730.00, which would not result in a two level increase pursuant to §2B1.1.

---

[2] There was one government witness, Dawn Doster, who testified that one box of books was found unopened and thereafter placed into storage. This says more about Ms. Doster's concern for the children learning than it does about acquiring the books in the first instance.

However, the Addendum to the PSI suggests that Application Note 1(F)(b) precludes such a credit. The Probation Office is mistaken. That Application Note provides, in pertinent part, "in a case involving a scheme in which . . . (iii) goods for which regulatory approval by a government agency was required but not obtained, or was obtained by fraud, loss shall include the amount paid for the property, services or goods transferred, rendered, or misrepresented, with no credit provided for the value of those items or services." First, there was no "scheme" as all of the Defendants were acquitted of the conspiracy in Count 1. Second, the regulatory approval references the United States grant to Hillsborough County as opposed to the Head Start expenditure of funds already allotted. Moreover, given that the purchase was under $10,000.00, all of the trial testimony reflected that this amount of spending was within the discretion of certain managers at Head Start and not subject to supervisory review. As such, the Application Note does not defeat the Defendant's loss calculation.

In sum, Head Start purchased books, consistent with its educational program, from a block grant which did not prohibit such purchases and which has not been audited to disallow the subject purchase. Whether Head Start spent the subject $9,000.00 on the book authored by the Defendant's wife (and there was no rule preventing such purchase) or otherwise, the United States would still be out the full amount of the block grant to Head Start. There is no discernable loss for §2B1.1 purposes.

### ii. Abuse of Position of Trust

The PSI also imposes a two level enhancement for Mr. Jimenez's abuse of a position of trust pursuant to §3B1.3. In material part, that section provides, "if the Defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by two levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic."

The Defendant contends that his actions in no way significantly facilitated the commission of the subject offense. The evidence demonstrated that Mr. Jimenez brought his wife's book to the Head Start offices so that it could be reviewed by Marie Mason for possible purchase. Ms. Mason involved nurse Bell in the acquisition process, although nurse Bell testified that she had advised Ron Knight, Marie Mason, and Mr. Jimenez that the book was inappropriate at a meeting and further noted that Mr. Jimenez did not respond to her comments and that Ms. Mason simply told her to order the book. Thereafter, the book was received by the County and Mr. Jimenez acknowledged that the County had in fact received the books which had been ordered.[3] Contrary to Probation's assertion ("if not for his position and his ability through that position to approve the book purchase . . ."), the Defendant did not approve the subject book purchase. His role was that of a spouse making

---

[3] There was much testimony regarding the acknowledgment of receipt. Linda Edman first acknowledged the receipt, but internal procedures required a second acknowledgment. That would ordinarily have been Carol Tedder, however, due to her unavailability, Mr. Jimenez was the second acknowledgment on record.

the book available to the agency where he was employed. His error, if any, was failing to file a formal document with Hillsborough County Human Resources acknowledging that his wife owned a business which was to engage in a transaction with the County.[4]

Moreover, United States v. Williams, 527 F.3d 1235 (11th Cir. 2008), supports our position. There, the Eleventh Circuit concluded that the Defendant must have a direct relationship with the governmental entity in order to be assessed a two level enhancement for the abuse of trust resulting from that relationship. Mr. Jimenez clearly had no such relationship with the Department of Health and Human Services.

Mr. Jimenez's position with Head Start only allowed him the ability to introduce his wife to Head Start personnel. That ongoing relationship was years in the making prior to her authoring the subject book. His wife, at a public meeting, made everyone aware of the book's future availability and Mr. Jimenez was simply a conduit to physically make the book available to Head Start personnel. He was not involved in the authorization for the book's purchase nor did he exercise any influence for that purchase. That is to say, he did not use his position in such a way as to significantly facilitate the commission of the subject offense.

### iii. Guideline Summary

If Mr. Jimenez is correct in his guideline analysis, his guideline score would be offense level 6, criminal history category I, with a range of 0 to 6 months in Zone A. If he

---

[4] Even had he done so, there was no evidence in the record that such a notice would have prevented the subject purchase. Instead, there would have been Committee reviews as opposed to simply allowing Ms. Mason to exercise her discretionary authority.

is only correct on one of his two guideline objections, then Mr. Jimenez would score offense level 8, criminal history category I, or 0 to 6 months, also in Zone A.

### C. Imposing a Reasonable Sentence

After consideration of the advisory guideline range, this Court has authority pursuant to §3553(a) to impose a reasonable sentence, which may be higher or lower than the advisory range, resulting in a sentence sufficient but not greater than necessary.

As this Court heard the trial testimony, a detailed review is unnecessary for purposes of this memorandum. The idea of Mr. Jimenez defrauding the Head Start program is entirely inconsistent with his commitment and support of the program. There was no requirement that Mr. Jimenez make his wife's services and expertise available to Head Start, yet that is exactly what he accomplished in the years prior to the book sale. The record of volunteering was made clear from the trial testimony and needs no further discussion. Simply stated, Mr. Jimenez was not only an employee, but an advocate for the Head Start program.

Mr. Jimenez not only lost his employment with Head Start as a result of the book purchase, but his continued work as a CPA is in doubt. In response, Mr. Jimenez has taken the affirmative step of enrolling at Hillsborough Community College in an attempt to further his education and become a nursing professional. However, until he is able to obtain that status, his family will be forced to survive primarily on his wife's income as Mr. Jimenez has not been able to generate much in the way of income since his dismissal from Head Start.

Nonetheless, the family remains in their home, Mr. Jimenez's children remain in school, doing well, and, fortunately, all are healthy.[5]

Of course, outside of the subject case, Mr. Jimenez has led an exemplary life. He has graduated from college, served the United States as a reserve officer (receiving an honorable discharge in November of 2003), and has been active in his church and community affairs. Mr. Jimenez is not a hardened criminal, nor a past offender, but rather, an individual with a lifetime of success who now faces the future as a convicted felon. Given this history, and the nature of the subject offense, no useful purpose would be served by imposing a sentence of incarceration.

Toward that end, a non-incarceration sentence, given the totality of the circumstances, would nonetheless reflect the seriousness of the offense, promote respect for the law, and provide just punishment (Title 18, U.S.C., §3553(a)(2)). Indeed, statistics from the United States Sentencing Commission, 2010 Fiscal Report, Figure F (Imprisonment Rates of Offenders Eligible for Non-Prison Sentences in Selected Offense Types), shows that more than half, almost 60%, of offenders who are eligible for non-prison sentences in fraud cases receive such sentences. Given the absence of any aggravating factors in this cause, sentencing the Defendant to a non-prison sanction would be consistent with the majority of Zone B cases.

---

[5] While Mr. Jimenez does receive periodic counseling, as noted in paragraphs 58 and 59 of the PSI, his hopes for the future are not merely idealistic, as he has laid out a program for personal improvement, including the aforementioned enrollment at Hillsborough Community College.

## Conclusion

Mr. Jimenez presents at sentencing as a successful, middle-class individual who now has a felony conviction. It seems obvious that the commission of this offense is totally inconsistent with his other lifetime achievements. Given the nature of the offense and all of the attendant circumstances, along with the Defendant's personal history, this Court's placement of the Defendant on a period of probation would be consistent with all of the factors outlined in Title 18, U.S.C., §3553(a), the advisory sentencing guideline range, and would result in a reasonable sentence.

           s/ David T. Weisbrod
           DAVID T. WEISBROD, ESQ.
           412 East Madison Street, Suite 1111
           Tampa, Florida 33602
           (813) 223-2792 / (813) 223-3124 (fax)
           Attorney for Defendant
           Florida Bar No. 312487
           Email: dweislaw@yahoo.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: ROBERT E. O'NEILL, AUSA, United States Attorney's Office, 400 North Tampa Street, Suite 3200, Tampa, Florida 33602, this 14th day of October, 2011.

           s/ David T. Weisbrod
           DAVID T. WEISBROD, ESQ.